**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| LAWRENCE DUNBAR, | ) | CASE NO.    1:20 CR 108 |
|  | ) |  |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| UNITED STATES OF AMERICA, | ) | MEMORANDUM OPINION |
|  | ) | AND ORDER |
| Respondent. | ) |  |

This matter comes before the Court upon Petitioner, Lawrence Dunbar's ("Petitioner's")

Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255, and his Motion

for Evidentiary Hearing.  (ECF #110, 121).  The Government filed a Response in Opposition to

Petitioner's Motion, and the Petitioner filed a Reply in support of his motion.  (ECF #116, 120).


**I.**

On October 6, 2021, a jury found Mr. Dunbar guilty on one count of Felon in Possession

of a Firearm and Ammunition; one count of Possession with Intent to Distribute Carfentanyl; one

count of Possession with Intent to Distribute Cocaine; and, one count of Possession with Intent to

Distribute Heroin.  (ECF #83).  The Court sentenced him to 245 months in the Bureau of Prisons. (ECF #99, PageID 527).  Mr. Dunbar appealed his conviction to the Sixth Circuit arguing four assignments of error, including that (1) the Court erring in denying his motion to suppress before trial; (2) there was insufficient evidence to support his convictions; (3) the Court erred when it overruled objections to hearsay evidence; and, (4) defense counsel erred by failing to request a corrective jury instruction regarding hearsay evidence.  (ECF #22).  The Court of Appeals affirmed his conviction and sentence.  (ECF #33).  He now seeks to vacate his sentence on the grounds of ineffective assistance of counsel.

## II.

A petitioner that moves to vacate, set aside or correct a sentence pursuant to 28 U.S.C. §2255 must demonstrate that:  (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) it is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255.  In order to obtain relief under § 2255, petitioners must prove by a preponderance of the evidence that their constitutional rights were denied or infringed. *United States v. Brown*, 957 F.2d 679, 690 (6th Cir. 2020).  As such, a court may grant relief under § 2255 only if a petitioner has demonstrated "a fundamental defect which inherently results in a complete miscarriage of justice." *Id.* (internal quotation and citation omitted).  Relief cannot be granted for alleged errors that could have been reached by a direct appeal.  *Stone v. Powell*, 428 U.S. 465, 477 (1076). To "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

2

"Once the defendant's chance to appeal has been waived or exhausted. . . we are entitled to presume he stands fairly and finally convicted." *Id.* at 164.   If a § 2255 motion, as well as the files and records of the case, conclusively show that the petitioner is entitled to no relief, then the court need not grant a hearing on the motion.  *See* 28 U.S.C. § 2255; *see also Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (recognizing that evidentiary hearing is not required when the record conclusively shows that petitioner is not entitled to relief).

## III.

Petitioner's motion asserts six grounds, each of which is dependent upon an allegation of ineffective assistance of counsel.  Mr. Dunbar claims his counsel was ineffective for the following reasons:

(1)     counsel failed to effectively challenge the police's warrantless entry in Mr. Dunbar's apartment on Fourth Amendment grounds;

(2)     counsel "coerced" Mr. Dunbar into admitting the residence where he was arrested was his;

(3)     counsel failed to cite case law regarding whether Mr. Dunbar knew that he was a convicted felon;

(4)     on appeal, counsel failed to raise an argument that the United States failed to produce a search warrant affidavit;

(5)     counsel failed to interview prior managers of Dunbar's apartment complex; and,

(6)     counsel failed to notify Mr. Dunbar of the government's plea offer.

In order to prevail on an ineffective assistance of counsel claim, Petitioner must show that

his counsel's performance was deficient, and that the deficient performance prejudiced him to the extent that his conviction was unfair and the result was unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment." *Id.* Judicial scrutiny of counsel's performance must be "highly deferential." *Id.* at 689.

In order to establish that an attorney's representation was deficient, a petitioner must identify specific acts or omissions which he claims rose to the level of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687. The petitioner must then show that these acts or omissions caused counsel's representation to fall "below an objective standard of reasonableness." *Id.* at 687-88. The prosecution has no duty to prove that defense counsel's strategy was actually reasonable, rather the petitioner bears the burden of proving that the presumption is not warranted. *Id.* at 690.

When reviewing allegations of ineffective assistance, effectiveness should be measured by "prevailing professional norms, " not best practices or most common custom. *See, Harrington v. Richter*, 562 U.S. 86, 105 (2011)(quoting *Strickland*, 466 U.S. at 690)*; see, also, Rompilla v. Beard*, 545 U.S. 374, 380 (2005). The court's inquiry must consider the circumstances and perspectives of counsel at the time of the alleged error, and should not take place in a vacuum or with the benefit of hindsight. *See, Strickland*, 466 U.S. at 688-89. Judicial scrutiny of counsel's performance "must be highly deferential," indulging "a strong presumption that counsel's conduct falls withing the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged

4

action 'might be considered sound trial strategy.'" *Id.* at 689. Courts should not second guess strategical decisions. "Counsel may exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment." *Lewis v. Alexander*, 11 F.3d 1349, 1353-54 (6ᵗʰ Cir. 1993).

"The Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable or constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134 (1982). Further, attorneys have no duty to pursue frivolous arguments. *Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6ᵗʰ Cir. 2011).

In addition to proving deficiency, Mr. Dunbar will have to show that his counsel's errors prejudiced the outcome of his trial. An error by counsel, "even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Counsel is only ineffective under the Constitution if their performance was prejudicial to the defense. *Id.* at 692. It is insufficient to show that counsel's errors had "some conceivable effect on the outcome of the proceeding," rather, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Sixth Circuit has defined "reasonable probability" as that level of certainty which would lead the court to believe that the defendant lost "what he otherwise probably would have won," or "that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6ᵗʰ cir. 1992).

None of the allegations made by Mr. Dunbar establish ineffective assistance of counsel at his trial or on appeal.

1. <u>Grounds One and Two - Fourth Amendment/Search</u>

Mr. Dunbar's counsel did challenge the validity of the search of Mr. Dunbar's apartment. He argued that the search was unreasonable by filing a Motion to Suppress, and through his arguments at the resulting suppression hearing. (ECF #22, 47).   On appeal, Mr. Dunbar's attorney challenged the lower court's finding that the search and seizure were reasonable. His arguments were not successful because the search was reasonable  and was legally authorized as a protective sweep and as a warrantless search authorized by the terms of Mr. Dunbar's parole. There was evidence presented at the suppression hearing that Mr. Dunbar agreed to be subject to warrantless searches as a condition of his parole.  Even if he had not agreed, two arrest warrants had been issued based on parole violations, and there is no dispute that the officers had reasonable suspicion to believe that Mr. Dunbar did, in fact, violate his parole.  Pursuant to the arrest warrants, or once they had a reasonable suspicion that he had violated his parole, they were legally authorized to enter the apartment to arrest him, and to conduct a search.   Once in the apartment, they also had legal authority to conduct a protective sweep.

The parole officers could enter, search, and arrest Mr. Dunbar for violations of his probation whether or not he owned, or was a registered tenant of the property.   His status as resident, or guest would not affect the legality of the entry or the search. (ECF #47).   Counsel's decision to have Mr. Dunbar admit to residency in the apartment for purposes of the suppression hearing was a strategical decision that may have been related to standing and should not be second guessed by the Court.  Mr. Dunbar argues that *United States v. Granberry*, 730 F.3d 968 (9th Cir. 2013) creates an argument that parole searches are not permitted at locations other than the parolee's actual residence.  However, *Granberry*, even if it were controlling law in Ohio,

6

permitted searches at places where officers have probable cause to believe the parolee lives.

Officers in this case had probable cause to believe that Mr. Dunbar lived at this residence based

on their investigation, a confidential source who pointed them to the location, and because the

apartment management informed officers that Mr. Dunbar lived in the apartment.  Further, the

purported leaseholder was a non-existent person.  There was also evidence which was clearly

visible on the protective sweep incident to Mr. Dunbar's arrest, which suggested that he lived

there, alone, and would have justified a more thorough search incident to his parole violation.

Mr. Dunbar's counsel raised all of the relevant legal issues at each stage of the

proceedings.  Even if he had not, however, there would be no prejudice to Mr. Dunbar.  As a

parole violator, Mr. Dunbar was subject to arrest and to a warrantless search.  Whether Mr.

Dunbar admitted that the location of the search was his residence, or argued that he was simply a

guest would not have affected the scope or reasonableness of the search.  It also would not have

changed the outcome of the suppression hearing, and would not have altered the course of his

trial.

### 2. Ground Three - Knowledge of Conviction/*Rehaif*

Mr. Dunbar argues that his counsel should have known about *Rehaif v. United States*, 139

S. Ct. 2191 (2019), which was decided during the pendency of the case and presumably used it

somehow to challenge Mr. Dunbar's knowledge of being a convicted felon.  Whether or not

counsel was aware of the case, and whether or not he informed Mr. Dunbar of its existence, there

is no dispute that Mr. Dunbar was aware that he had previously been convicted of a felony.  Prior

to the start of trial Mr. Dunbar signed a stipulation that he agreed he was "convicted of a crime

punishable under the laws of the state of Ohio by a term of imprisonment exceeding one year,

7

and the Defendant had knowledge of this conviction." (ECF #79).  Further, he served multiple lengthy prison sentences for various prohibiting felonies.  He does not claim that he was unaware that he was prohibited from possessing a firearm, let alone that he was unaware that he had previously convicted of at least one felony.   If he was aware of his prior felonies, any argument under Rehaif would have been, at the very least, frivolous.  Attorneys have no duty to pursue frivolous arguments. *Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011).
Therefore, Mr. Dunbar cannot prove that his counsel erred by failing to raise *Rehaif* or that he was prejudiced in any way by the alleged failure.

    3. <u>Ground Four - Ineffective Assistance of Appellate Counsel</u>

    Mr. Dunbar alleges that his Appellate Counsel was ineffective for not raising a *Brady* violation claim on direct appeal. *Brady v. Maryland*, 373 U.S. 83 (1963), held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."   Mr. Dunbar cites the affidavit and search warrant as the allegedly exculpatory evidence withheld by the prosecution.   He does not, however,  identify any exculpatory information that he claims would have been contained in the affidavit or search warrant.   Further, the affidavit and search warrant he references were obtained after the protective sweep and parole search had already been conducted at the apartment.  As set forth in the Court of Appeals decision affirming his conviction, and as addressed above, the search was reasonable without need for a search warrant.  Thus, there was no error in failing to challenge the subsequent affidavit or search warrant, and the failure to raise this issue caused no prejudice to Mr. Dunbar.

4. <u>Ground Five- Witness</u>

Mr. Dunbar claims that his counsel was ineffective for not interviewing the apartment manager who told officers that he lived in the apartment, and calling him as a witness. He claims that he could have been examined on the stand to be discredited and throw doubt onto whether the apartment was actually Mr. Dunbar's residence. He does not explain how the manager could be discredited, nor how that would affect his case. Ineffective assistance of counsel cannot be established if the record does not show how the allegedly missing information might have altered the outcome of the case. *United States v. Robson*, 307 F. App'x 907, 911 (6th Cir. 2009). Further, deciding which witnesses to interview and call as witnesses is a strategic decision that is not to be second guessed by the courts. Even if the manager would have been called, it is equally or more likely that his testimony would only help the government's case.

The only information that apartment manager provided officers was his belief that Mr. Dunbar resided in the apartment. This belief was supported by the fact that Mr. Dunbar was in the apartment at an early morning hour, that there was evidence of only person living in the apartment, that the apartment had been identified as a place to find Mr. Dunbar by a confidential informant, and by the fact that the nominal leaseholder was a fictional person. As set forth above, and in the Court of Appeals opinion, Mr. Dunbar's conviction and sentence would not have changed if he were only an overnight guest at the apartment. The search that uncovered the illicit materials was made pursuant to his arrest and a parole search. Both would have been equally justified whether he was a resident of the apartment or only a guest. Therefore, there was no error by not calling the manager as a witness, and there is no basis to presume that the absence of his testimony prejudiced Mr. Dunbar in any way.

9

5. <u>Ground Six - Plea Offer</u>

Mr. Dunbar's final grounds for relief is his assertion that he was not informed that the Government had made a plea offer.  This assertion is clearly disproven by the record.  On September 22, 2021, the United States disclosed its full and final plea offer to the Defendant and his counsel, on the record during a hearing, held in compliance with *Missouri v. Frye*, 566 U.S. 134 (2012). (ECF #82).  It explained, on the record, the general terms of plea offer, which was also provided to Defendant's counsel, in writing.  Mr. Dunbar was given until September 24, 2021, at noon, to accept the offer before it would be rescinded.  Mr. Dunbar did not accept that plea.  He does not claim to have accepted the plea, or to have asked for an extension of time within which to consider the offer.  He chose to exercise his right to trial.  There was no error by his counsel, and even if his counsel knew earlier of a potential plea offer, there is no prejudice because Mr. Dunbar was informed, on the record, of the existence and the substance of the plea offer, prior to his trial date.

Because the files and records in this case conclusively show that Petitioner is entitled to no relief under § 2255, no evidentiary hearing is required to resolve the pending Motion.  As Mr. Dunbar has failed to meet his burden of proving a violation of his constitutional rights by a preponderance of the evidence, on any grounds, his claim is DENIED.

10

**IV.**

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of appealability as to any of the claims presented in the Petition.  28 U.S.C. § 2253 provides, in part, as follows:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In order to make "substantial showing" of the denial of a constitutional right, as required under 28 U.S.C. § 2255(c)(2), a habeas prisoner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issue presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).)

Where a district court has rejected the constitutional claims on the merits, the petitioner must demonstrate only that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack*, 529 U.S. at 484.

11

For the reasons stated above, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court declines to issue a certificate of appealability. For the reasons set forth above, Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF #110), and his Motion for Evidentiary Hearing (ECF #121) are  DENIED.

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: February 22, 2024