**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LAWRENCE DUNBAR,** | ) | **Case No. 1:20–CR–00108** |
| | ) | |
| **Defendant–Petitioner,** | ) | |
| | ) | **JUDGE DONALD C. NUGENT** |
| **v.** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **Memorandum Opinion and Order** |
| | ) | |
| **Plaintiff–Respondent.** | ) | |

This matter is before the Court on Defendant–Petitioner Lawrence Dunbar's *Motion for Relief from Judgment for Fraud Upon the Court* filed on August 10, 2026. (ECF #141). His *Motion* contains requests under Federal Rule of Civil Procedure 60 to set aside the judgment denying his motion to vacate under 28 U.S.C. § 2255 (ECF #124), to reinstate his motion to vacate, to authorize discovery under Rule 6 of the Rules Governing § 2255 Proceedings, and to conduct an evidentiary hearing. (*Id.*). Plaintiff–Respondent United States of America filed a *Response in Opposition* on September 1, 2026. (ECF #142). Mr. Dunbar's *Motion* is now ready for review.

**Factual and Procedural History**

On October 30, 2017, in the Cuyahoga County Court of Common Pleas, Defendant pled guilty to robbery with a firearm specification, attempted felonious assault, and having weapons while under disability. *State of Ohio v. Dunbar*, Case No. CR-16-609827-A. He was ordered released as of October 23, 2017. *Id.* While under supervision, the Probation Department advised the Cuyahoga County Court of Common Pleas that Defendant had violated his terms of probation, and a capias warrant was issued on July 26, 2018. *Id.*

In February of 2019, Defendant incurred an additional charge out of the City of Euclid for a felonious assault shooting. (ECF #47, *Transcript of Suppression Hearing*, p.8). The City of Euclid issued a separate warrant, resulting in two outstanding warrants for Mr. Dunbar's arrest. (*Id.*). To assist in his apprehension, Mr. Dunbar's warrants were referred to the Northern Ohio Violent Fugitive Task Force, with Task Force Officer Brian Ortiz spearheading the operation.[1] (*Id.* at 6–7).

Mr. Ortiz received information that Mr. Dunbar resided at 2249 Elm Street in Cleveland, Ohio. (ECF #100, *Jury Trial Transcript Volume I*, p.28–29). On July 25, 2019, Mr. Ortiz "confirmed with management and other people in the apartment building that [Mr. Dunbar] was currently residing in the apartment," identified as Apartment 318. (ECF #47, p.24). Mr. Ortiz retrieved a key for Apartment 318 from the leasing office. (*Id.* at 12).

Task Force Officers approached Apartment 318 and voiced their presence while knocking. (*Id.*). No one answered the door, but Officers heard rustling from inside the apartment. The Officers opened the door, called into the apartment once again, and still received no response. (*Id.*). Officers entered the apartment's entryway and cleared areas where an individual

[1] Mr. Ortiz held dual roles and was assigned to the Northern Ohio Violent Fugitive Task Force while employed by the Ohio Adult Parole Authority. (ECF #100, *Jury Trial Transcript Volume I*, p.24–25).

could be hiding. (*Id.* at 13). In doing so, the Officers located a firearm under the couch in a raised living room. (*Id.* at 18). The Officers went deeper into the apartment and, after calling out several times, Mr. Dunbar exited the bedroom and stated, "Here I am, and I do not have any, I don't have a gun." (*Id.* at 13–14). After detaining Mr. Dunbar, Mr. Ortiz noticed possible drug paraphernalia in the bedroom from which Mr. Dunbar came. (*Id.* at 14–15).

After discussing with his supervisor over the phone, Mr. Ortiz conducted a warrantless search of the residence for evidence of parole violations pursuant to his authority as an Ohio Adult Parole Authority Officer. (*Id.* at 15). After uncovering narcotics, Mr. Ortiz decided to stop the search and apply for a search warrant because drugs are "more outside the scope of Adult Parole Authority to seize" and securing drugs in evidence is "something that is referred to police departments." (*Id.* at 17–18).

After securing the search warrant, Mr. Ortiz and his team conducted a more thorough search of the residence. (*Id.* at 19–20). They found several items indicative of drug trafficking, including substances that later tested positive for cocaine, heroin, and carfentanyl, a loaded handgun, protective gloves, a face mask, naloxone strips, baggies, various quantities and mixtures of cutting agents, fifteen cellphones, a tablet, multiple digital scales, and several Ohio Direction Cards and licenses issued to individuals other than Mr. Dunbar. (ECF #142, *Response in Opposition*, p.6 [PageID #1349]). Officers also found personal effects in the residence including receipts bearing Mr. Dunbar's name, a set of car keys containing a fob used by residents to gain entry into the parking garage, clothing of a similar size and style to that worn by Mr. Dunbar, a single toothbrush, and other belongings. (*Id.* at 7 [PageID #1350]).

Having seized the firearm, drugs, and drug paraphernalia, it became a federal matter. On January 12, 2020, Mr. Dunbar was indicted in the Northern District of Ohio, Eastern Division,

for being a felon in possession of a firearm (Count One); possessing with the intent to distribute carfentanyl, cocaine, and heroin (Counts Two–Four); and for possessing a firearm in furtherance of a drug trafficking crime (Count Five). (ECF #1, *Indictment*).

**Procedural History**

Mr. Dunbar objected to the search of Apartment 318 and moved to suppress the evidence recovered from the search. (ECF #22). This Court held a Suppression Hearing on April 13, 2021, and denied his *Motion to Suppress*. (ECF #35). Mr. Dunbar proceeded to trial, which commenced on October 4, 2021. (ECF #80). The jury ultimately found Mr. Dunbar guilty in the Northern District of Ohio, Eastern Division, of being a felon in possession of a firearm and of possession with intent to distribute carfentanyl, cocaine, and heroin on October 7, 2021.[2] (ECF #84). This Court sentenced Mr. Dunbar to 245 months of imprisonment. (ECF #91).

Mr. Dunbar appealed his conviction on January 31, 2022, and filed a *Motion to Vacate* under 28 U.S.C. § 2255 on August 30, 2023, along with a *Motion for Evidentiary Hearing* on December 4, 2023. (ECF #95); (ECF #110); (ECF #121). The Government opposed Mr. Dunbar's *Motion to Vacate* on December 4, 2023. (ECF #120). Mr. Dunbar's *Motion to Vacate* alleged several grounds of ineffective assistance of counsel. Generally, Mr. Dunbar alleged his attorney failed to properly challenge the search of the apartment. (*See generally* ECF #110). More specifically, Mr. Dunbar's Ground One provided that:

> Counsel thought, incorrectly, that status as an overnight guest would eliminate Dunbar's standing to assert a violation of the search of a host's apartment, under the Fourth Amendment. With a flawed understanding of the law, Counsel could not effectively challenge the warrantless entry, by probation officers into a particular residence. Counsel's incorrect understanding, hindered his ability to challenge the probable cause requirements of the Fourth Amendment, thus Dunbar's Sixth Amendment rights were violated.

[2] Mr. Dunbar was found not guilty on Count Five, which charged him with possessing a firearm in furtherance of a drug trafficking crime. (ECF #84).

(ECF #110, p.5 [PageID # 1032]) (grammatical errors retained). The Court denied Mr. Dunbar's *Motion to Vacate* and his *Motion for Evidentiary Hearing* on February 22, 2024. (ECF #124). In denying Ground One, the Court noted that:

> His arguments were not successful because the search was reasonable and was legally authorized as a protective sweep and as a warrantless search authorized by the terms of Mr. Dunbar's parole. . . [T]wo arrest warrants had been issued based on parole violations, and there is no dispute that officers had reasonable suspicion to believe that Mr. Dunbar did, in fact, violate his parole. Pursuant to the arrest warrants . . . [officers] were legally authorized to enter the apartment to arrest him, and to conduct a search. . . [Accordingly] [h]is status as a resident, or guest would not affect the legality of the entry or the search. . . [In addition,] Officers in this case had probable cause to believe that Mr. Dunbar lived at the residence based on their investigation, a confidential source who pointed them to the location, and because the apartment manager informed officers that Mr. Dunbar lived in the apartment. Further, the purported leaseholder was a non-existent person.

(ECF #124, *Memorandum Opinion and Order*, p.5–6). Mr. Dunbar appealed the denial of his *Motion to Vacate*, and the Court of Appeals declined to grant him a Certificate of Appealability on August 2, 2024. (ECF #134, *Notice of Appeal*); (ECF #135, *Order Denying Certificate of Appealability*). Mr. Dunbar filed the instant motion on August 10, 2026, moving the Court to set aside its prior judgment, reinstate his § 2255 motion, permit discovery under Rule 6 of the Rules Governing § 2255 Proceedings, and conduct an evidentiary hearing. (ECF #141). He alleges the Government committed fraud upon the Court by misrepresenting evidence it provided during his § 2255 proceedings and moved for relief under Federal Rule of Civil Procedure 60(d)(3). The Government filed a *Response in Opposition* on September 1, 2026. (ECF #142).

## Legal Standard

Under Federal Rule of Civil Procedure 60(d)(3), a court may set aside a judgment for "fraud on the court." Fed. R. Civ. P. 60(d)(3).[3] To prevail under this subsection, a petitioner must show conduct "(1) by an officer of the court; (2) directed to the 'judicial machinery' itself; (3) which was intentionally false, willfully blind to the truth, or in reckless disregard of the truth; (4) which was a positive averment or a concealment when under a duty to disclose; and (5) which deceived the court." *In re M.T.G., Inc.*, 164 F.4th 564, 574 (6th Cir. 2026) (quoting *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993)). Fraud upon the court has been interpreted narrowly by the Sixth Circuit, which held that it only concerns "that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases . . . and relief should be denied in the absence of such conduct." *Demjanjuk v. Petrovsky*, 10 F.3d 338, 352 (6th Cir. 1993). The petitioner, Mr. Dunbar, has the burden of proving fraud on the court by "clear and convincing evidence." *In re M.T.G., Inc.*, 164 F.4th at 574 (quoting *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009)).

## Discussion

In his current *Motion*, Mr. Dunbar challenges the Court's denial of Ground One based on its alternative holding that officers had probable cause to believe he lived in Apartment 318. (ECF #141, p.2 [PageID #1253]). He argues that the Government, in essence, misled the Court into finding probable cause by providing faulty information during the § 2255 proceedings about a confidential source and a purported leaseholder. (ECF #141, p.2 [PageID #1253]); (ECF #141,

[3] Federal Rule of Civil Procedure 60 is a "rule of civil procedure that does not apply in criminal proceedings," but the rule does apply in § 2255 motion practice. *United States v. Yandal*, Case No. 12–6333, 2013 WL 12569250, at *2 (6th Cir. Nov. 25, 2013).

p.7 [PageID #1258]) ("the Government supplied this Court with a probable-cause basis it had successfully excluded from the adversarial record, and with an affirmative factual assertion about the leaseholder that was untrue[.]").

Mr. Dunbar argues first that "[t]here is no confidential source anywhere in the suppression record" and that "[n]o informant was named, produced, or tested." (ECF #141, p.2 [PageID #1253]). Second, he argues that "the 'non-existent person' who held the lease exists." (*Id.* at p.3 [PageID #1254]). In support of his second argument, Mr. Dunbar reattaches an "Affidavit of Fact" that he previously attached to his § 2255 motion, which purports to establish that "LaShae Miller has sworn that she rented Apartment 318 in April 2019, that she obtained a credit-privacy number in order to do so, that she thereafter permitted family and friends to use that apartment, and that *Lawrence Dunbar did not live there*." (*Id.*) (emphasis retained).

Mr. Dunbar surmises that together these two alleged discrepancies mean that the Court's finding of probable cause was "procured by representations that were shielded, unsupported, and in part false," which amounts to a "defect in the integrity of the proceeding." (*Id.* at p.4–5 [PageID #1255–56]).

Mr. Dunbar has not alleged any defects in his § 2255 proceeding. With respect to the confidential source, the record is clear that officers reached their conclusion about his location based upon "investigative measures" and by speaking with individuals in the apartment, including managers in the leasing office. Further, the reference to a "non-existent" leaseholder is neither supported by the record nor a misstatement by the Government. Nothing in the record suggests that the Government intended to convey that the leaseholder of Apartment 318 did not exist. Rather, the Government illustrated that the leaseholder was a fictitious person.[4] In

[4] Officers received information from management that the lease was purportedly held by "Justin Cooper," who they deemed a fictitious individual because he could not be located by law enforcement, possessed

conclusion, neither of Mr. Dunbar's alleged improprieties on behalf of the Government are sufficient to prevail on a Rule 60 motion, which is reserved for "that species of fraud which does or attempts to defile the court itself." *In re M.T.G., Inc.*, 164 F.4th 564, 574 (6th Cir. 2026).

**Conclusion**

Mr. Dunbar has failed to provide sufficient evidence that the Government committed fraud during his § 2255 proceeding. Accordingly, Defendant-Petitioner Lawrence Dunbar's *Motion for Relief from Judgment for Fraud Upon the Court* under Fed. R. Civ. P. 60(d)(3), (ECF #141), is DENIED.

IT IS SO ORDERED.

Donald C. Nugent

DONALD C. NUGENT
United States District Judge

DATED: 9/15/2026

---

a Social Security number that didn't come back to anyone, and was associated with a driver's license number that was obviously phony because it consisted of three letters followed by four numbers, unlike a legitimate Ohio Driver's License, which contains two letters followed by six numbers. (ECF #101, *Jury Trial Transcript Volume II*, p.100); (*Id.* at 184–85).